DOROTHY SMOLEK *et al.*, Plaintiffs-Appellants, v. K.W. LANDSCAPING, Defendant (Ollman Town Homeowners Association, Defendant-Appellee).

Second District   No. 2—93—0707

Opinion filed August 30, 1994.

Thomas J. Fleischmann and Vanessa J. Weathersby, both of Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago, for appellants.

John B. Higgins and Stephen Burriesci, both of Clancy & Krippner, P.C., of St. Charles, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff Dorothy Smolek's personal injury action against defendants, the Ollman Town Homeowners' Association (Association) and K.W. Landscaping (K.W.), arose from injuries she sustained after stepping into a hole on the Association's property. Dorothy's husband,

plaintiff Louis Smolek, commenced an action against defendants for loss of consortium. At the close of plaintiffs' case, the circuit court of Du Page County granted defendants' motions for directed verdicts. On appeal, plaintiffs argue that they presented evidence sufficient to allow the jury to conclude that the Association had constructive notice of the dangerous condition that existed on its property.

Plaintiffs lived in the West Lake Town Home Complex in Glendale Heights. The Association managed this complex. They purchased the town home in 1978 and became members of the Association. The Association owns and maintains the lawn that is adjacent to plaintiffs' town home. The lawn is one of the common areas of the town home complex.

At about 8 a.m. on September 30, 1989, Dorothy took one of her dogs for a walk. Plaintiffs owned two dogs. Dorothy walked each one separately, taking each one for a walk about five or six times per day. She took the same route daily for about three years. She would walk out of the back door, onto the lawn, and on top of a berm. This berm was about 50 feet from her home. The top of the berm was flat, and she typically walked the dogs around the several trees that are on the berm. On the day in question, she walked out of the back door and onto the lawn. As she was walking on top of the berm, her left foot got caught in a hole, and she fell forward. According to plaintiff, the hole was about four to eight inches deep. It was shaped like an oval and was about 18 inches long and 12 inches wide.

Dorothy testified that she did not see the hole as she was walking because the surrounding grass grew up over it and had concealed it. She was able to get up and free her foot from the hole. As she attempted to step down from the berm, her left foot gave, and she slid down the hill.

Dorothy further testified that there was a crab apple tree at the location of the hole in which she tripped. This tree was removed either in the autumn of 1988 or the spring of 1989. However, in the three years that Dorothy walked her dogs in this area, she never noticed any holes. She also testified that she did not know if the Association knew of the existence of the hole prior to the accident.

Louis Smolek testified that he was at home at the time of the accident and went to Dorothy's aid after hearing her yell for help. About one week after the accident, Dorothy described to Louis the location of the hole. Initially, Louis could not locate the hole, but he eventually found it on another occasion. Louis stated that there were tree roots, wood chips, and vegetation inside the hole and that the hole varied from four to eight inches in depth. He also stated that there used to be a crab apple tree at the location of the hole and that

someone removed the tree either in the autumn of 1988 or the spring of 1989. Neither Louis nor Dorothy complained to the Association about the hole and neither measured its dimensions. Louis did not know whether the Association knew of the hole's existence prior to the accident.

Kenneth Wellhausen testified that he is the president of defendant K.W. In 1989, K.W. contracted with the Association to perform lawn maintenance services for the town home complex. Pursuant to the contract, K.W. employees cut, fertilized, and raked the lawn. The lawn care season was from April 1 to October 31, and the contract required K.W. to rake the lawn and clean up other debris every spring and every autumn. Before K.W. and the Association executed the contract, K.W. offered, for $1,500, to repair, with soil and grass seed, damaged and sunken turf. The Association declined the offer.

At the close of plaintiffs' case, the trial court granted both defendants' motions for directed verdicts. The court found that the Association had neither actual nor constructive notice of the existence of the hole. Plaintiff timely appealed from the order granting the Association's motion for a directed verdict. K.W. is not a party to this appeal.

Plaintiffs contend that they presented evidence sufficient to allow a jury to determine whether the Association had constructive notice of the existence of the hole. The relationship between the Association and plaintiffs is most akin to that of a landlord and tenant. The Association owned and maintained the area in question as a common area for the use of the residents of the town home complex. Therefore, the Association had the duty to exercise reasonable care to keep the premises over which it maintained control for the common use of the residents in a reasonably safe condition. (*Williams v. Lincoln Tower Associates* (1991), 207 Ill. App. 3d 913, 916.) A person or entity in the Association's position will be liable for an injury to a person lawfully in such a common area that results from a breach of this duty. (*Williams*, 207 Ill. App. 3d at 916.) In order to demonstrate that a defendant breached its duty of maintaining the premises under its control in a reasonably safe condition, it is necessary to establish that the defendant had actual or constructive knowledge of the existence of the dangerous condition that caused the injury. *Gengler v. Herrington* (1991), 219 Ill. App. 3d 6, 11.

Plaintiffs do not claim that the association had actual knowledge of the existence of the hole. Generally, if a plaintiff is relying on proof of constructive notice, she must establish that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition through the exercise

of reasonable care. (*Burke v. Grillo* (1992), 227 Ill. App. 3d 9, 18; *Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 556.) Also, a defendant who has notice of facts which would cause a reasonable person to inquire further may be charged with having notice of other facts that might have been discovered after a reasonable inquiry. (*Pinto v. DeMunnick* (1988), 168 Ill. App. 3d 771, 774.) Generally, whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on its property is a question of fact. However, a directed verdict in the defendant's favor is appropriate if the evidence, viewed in the light most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary finding based on that evidence could ever stand. *Mazzone v. Chicago & North Western Transportation Co.* (1992), 226 Ill. App. 3d 56, 62.

■ Plaintiffs first argue that the evidence was sufficient to allow the jury reasonably to conclude that the hole existed for a sufficiently long time to impute notice to the Association. Both plaintiffs testified that, in either the autumn of 1988 or the spring of 1989, someone removed a crab apple tree that stood in the same location as the hole. Plaintiffs claim that the jury could reasonably infer that the removal of the tree created the hole and that the hole existed for up to a year prior to the accident.

The Association claims that we must summarily affirm the trial court's ruling because the record on appeal is incomplete. At trial, plaintiffs introduced into evidence several photographs of the hole. These photographs are not a part of the record on appeal. However, there is testimony describing the hole and the surrounding area. This testimony is sufficient to permit a review of the trial court's findings.

We conclude that, even if the hole existed for one year prior to the accident, it was so inconspicuous that the Association cannot be charged with the knowledge of its existence. In reaching this conclusion, we rely on *Burke* and *Pinto*. In *Burke*, the plaintiff was walking on a grassy area near a public sidewalk and fell after tripping in a dip or a rut in the lawn. She described the hole as being $2^{1}/_{2}$ to 3 inches deep and $2^{1}/_{2}$ to 3 feet across. The plaintiff's husband and daughter claimed the rut existed for more than one year prior to the accident. However, the plaintiff walked in that area daily, but never noticed the rut before the date of the accident. She could not see the rut because "the grass was growing up there." We held that summary judgment for the defendant was appropriate because "there was \*\*\* no evidence that the hole was plainly visible or that it was apparent for a long time prior to the injury." *Burke*, 227 Ill. App. 3d at 19.

Also instructive is *Pinto*. There, the plaintiff fell into a hole on a

parkway that belonged to the defendant municipality. An owner of the property abutting the parkway filled the hole twice, once about three months before the accident and again about one to two months before the accident. He mowed the lawn sometime after filling the hole the second time and did not notice any hole. The owner's wife did not notice the hole when she mowed the parkway lawn five days before the accident. The court held that the trial court should have granted the defendant's motion for a directed verdict because the plaintiff "failed to present sufficient evidence that the hole was apparent for so long a time prior to the injury to permit an inference that the Village was constructively notified of the existence of the hole." *Pinto*, 168 Ill. App. 3d at 775.

Likewise, plaintiffs here have failed to present evidence sufficient to establish constructive notice. As in *Burke*, the grass and other vegetation that had grown up over the hole concealed it. There was no evidence that anyone knew of the hole's existence before the accident. Although Dorothy walked in that area several times daily, she never noticed the hole prior to the accident. Louis experienced difficulty finding the hole even though Dorothy gave him a description of its location.

*Burke* and *Pinto* teach that, even where the condition has existed for a considerable time, constructive notice cannot exist where the dangerous condition is so well concealed that it is unlikely to be discovered through the exercise of reasonable care. That the defendants in *Burke* and *Pinto* were municipalities and that their liability was governed by the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1992)) does not render these cases distinguishable. The Local Governmental and Governmental Employees Tort Immunity Act imposes liability when the public defendant has constructive notice of the dangerous condition that caused the injury. (745 ILCS 10/3—102(a) (West 1992).) Therefore, the analysis is very similar to that which must be applied here. There is no evidence that a reasonable inspection of the common areas would have revealed the existence of the hole. Plaintiffs did not present sufficient evidence that the hole was apparent for a long enough time to permit an inference that the Association should have discovered it through the exercise of reasonable care.

Plaintiff claims that the consequence of the trial court's ruling is that plaintiffs in slip-and-fall cases will never have their cases reach a jury. According to plaintiffs, this is because on the one hand a plaintiff may not recover where she is aware of an open and obvious

dangerous condition. (See *Cope v. Doe* (1984), 102 Ill. 2d 278, 286.) On the other hand, under the trial court's reasoning, a plaintiff will not recover where her lack of knowledge of the dangerous condition is used to demonstrate the lack of a defendant's constructive notice.

Here, however, we are not focusing solely on plaintiffs' lack of knowledge. Instead, we concentrate on the condition of the hole and whether the Association should have known of its existence. Moreover, a plaintiff's lack of knowledge about an inconspicuous danger will not bar recovery where the landowner is in a better position to discover the condition or is aware of some fact that puts him on notice of the potential existence of the condition. What makes this case unique is that Dorothy walked in this area several times each day and therefore was in an equally good position to discover the hole. Therefore, the trial court could conclude under these circumstances that Dorothy's failure to discover the hole indicates that the Association would not have discovered it through the exercise of reasonable care.

■ Plaintiffs also argue that the Association was aware of facts that "would put a reasonably prudent person on inquiry" so as to render the Association "chargeable with knowledge of any fact that might be discovered by a reasonable investigation." (*Pinto,* 168 Ill. App. 3d at 774.) They claim that, when K.W. offered to repair areas of sunken turf, the Association was put on inquiry about the condition of the property and would have discovered the hole after conducting a reasonable investigation pursuant to that inquiry.

We disagree. There was no evidence describing the character and location of the damaged areas that K.W. allegedly discovered. The mere offer to repair areas of sunken turf does not necessarily put the landowner on inquiry as to whether a dangerous condition exists on its property. There was no evidence to indicate that any of the areas of sunken turf that K.W. discovered was of such a nature as to present a danger to people walking on the property.

Moreover, we have already noted that plaintiffs' evidence demonstrates that the hole was highly inconspicuous. Even if K.W.'s offer was sufficient to put the Association on inquiry, there is no evidence indicating that the Association would have discovered the hole after conducting a reasonable inspection of the entire property. Considering the inconspicuous nature of the hole, obscured by vegetation, its discovery was not a consequence that would have flowed naturally from any information that the Association may have gleaned from K.W.'s offer to repair sunken turf.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

QUETSCH and COLWELL, JJ., concur.