SIXTH DIVISION

June 1, 2001

No. 1-99-1929

MARGARET ANN GLASS,

Plaintiff-Appellant,

v.

THE CITY OF CHICAGO, a Municipal Corporation,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

No. 94 L 7057

Honorable

Irwin J. Solganick,

Judge Presiding

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Margaret Ann Glass, appeals from a jury verdict in favor of defendant, the City of Chicago (the City), on her claim for personal injury damages sustained from a fall on a City sidewalk.  Plaintiff asks this court to enter judgment notwithstanding the verdict and to order a new trial limited to the issue of damages.  Alternatively, plaintiff asks this court to remand the case for a new trial.

At trial, plaintiff testified that a hole in the sidewalk approximately eight inches wide by three feet long and approximately 2½ inches deep, located near the intersection of Wrightwood and Clark, caused her to trip and fall, resulting in injuries which aggravated a preexisting medical condition.  Further, plaintiff testified that after receiving treatment for her injuries at a hospital emergency room, she returned to the scene and photographed the hole.  Plaintiff's photographs were admitted into evidence.

At trial, occurrence witness Ted Pawasarat testified that he was standing on Wrightwood facing Clark when he heard a commotion, that he turned toward the commotion and saw plaintiff sliding on the street.  Occurrence witness Ted Dzendrowki similarly testified that he was driving near the corner of Wrightwood and Clark when he saw plaintiff fall at the hole in the sidewalk.  Further, George Marinakis testified that he owned a building at the corner of Wrightwood and Clark and that approximately one year before plaintiff's accident he went to a City office and personally  asked the City to repair the sidewalk.  Marinakis added that following his initial request, he made four or five follow-up requests that the City repair the sidewalk. Plaintiff's physicians testified to the extent of her injuries and that the trauma of the injuries aggravated a preexisting medical condition. 

At the conclusion of her case in chief, plaintiff requested a directed verdict arguing over defendant's objection that the court could determine notice as a matter of law.  The circuit court denied plaintiff's motion and the trial proceeded.

Jerome Eck, an accident reconstruction expert, testified on behalf of defendant that, based upon plaintiff's deposition, Pawasarat's deposition, and copies of the photographs taken by plaintiff, plaintiff could not have tripped and landed in the street without hitting Pawasarat in the course of her fall.  In particular Eck based his opinion upon the deposition testimony of plaintiff and Pawasarat regarding their positions at the time of the fall and after the fall.  According to Pawasarat's deposition testimony, plaintiff fell to his right, but according to Pawasarat's trial testimony, he was unsure whether plaintiff fell to his left or his right.  Further, at trial, Pawasarat was unable to recall  exactly where he was standing at the time of the accident and testified he may have been standing further south than he indicated in his deposition.  At the conclusion of Pawasarat's trial testimony, plaintiff moved to strike Eck's expert testimony as lacking sufficient basis in fact.  The circuit court refused to remove the testimony from the record, but allowed plaintiff to argue the matter to the jury.

Dr. David Shenker also testified on behalf of defendant that plaintiff's fall did not aggravate her preexisting medical condition, but that subsequent flare-ups of symptoms fell within an established pattern.  However, Dr. Shenker admitted on cross-examination that he had only treated 10 to 20 patients with plaintiff's condition in the course of his career.

Following the close of evidence, plaintiff again moved for a directed verdict on the issue of notice.  The circuit court denied the motion.

At the jury instructions conference, plaintiff objected to defendant's proffered Illinois Pattern Jury Instruction, Civil,  No. B120.09 (3d ed. 1995) (hereinafter IPI Civil 3d), because it imposed a duty only where the City should have anticipated that a person on the premises would not discover or realize the danger or would otherwise fail to protect himself against it, a duty standard different from that in the Local Governmental and Governmental Employees Tort Immunity Act (Governmental Tort Immunity Act) (745 ILCS 10/3-101 
et seq.
 (West 1998)).  Plaintiff tendered an amended version of IPI Civil 3d No. 20.01
 
and argued that this instruction, together with her other proffered jury instructions (specifically IPI Civil 3d B21.02), properly and adequately advised the jury of her burden of proof.  The circuit court ruled in favor of defendant and tendered IPI Civil 3d No. B120.09 to the jury.  

At defendant's request, the court also tendered two special interrogatories to the jury.  

"SPECIAL INTERROGATORY NO. 1

On March 24, 1994 was the sidewalk that MARGARET ANN GLASS claims caused her to fall in reasonably safe condition.

         
 YES

         
 NO"

"SPECIAL INTERROGATORY NO. 2

Did the City of Chicago have actual or constructive notice prior to March 24, 1994 of the condition on the sidewalk that MARGARET ANN GLASS claims caused her to fall?

         
 YES

         
 NO"

During deliberations, the jury sent the court a note requesting a definition of "constructive notice."  The court did not provide a definition; instead, it instructed the jury to consider the case based on the evidence and the legal definitions before them.  The jury returned a general verdict in favor of defendant and responded to the two special interrogatories finding that the sidewalk was not in reasonably safe condition, but that the City did not have actual or constructive notice of the defect prior to plaintiff's accident.

On appeal, plaintiff argues she is entitled to a judgment 
n.o.v.
 because she proved the elements of notice, duty, breach, causation, and damages.  Alternatively plaintiff argues she is entitled to a new trial because the circuit court (1) improperly submitted the issue of notice to the jury, (2) failed to define the term "constructive notice" for the jury, (3) improperly admitted the testimony of defendant's reconstruction expert, and  (4) improperly instructed the jury regarding defendant's duty.

A judgment 
n.o.v.
 is appropriate only in those cases in which all of the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 229 N.E.2d 504 (1967) (directed verdict); 
Maple v. Gustafson
,  151 Ill. 2d 445, 452-53, 603 N.E.2d 508, 511-12 (1992) (applying 
Pedrick
 standard to judgment 
n.o.v.
).  Alternatively, a new trial is appropriate if the verdict is contrary to the manifest weight of evidence in that it is palpably erroneous, clearly the result of passion and prejudice or arbitrary and unreasonable.  
Maple v. Gustafson
, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13 (1992).

Here the jury's response to "Special Interrogatory No. 2," that the City lacked actual or constructive notice of the condition of the sidewalk, is potentially dispositive of plaintiff's appeal.  As the City correctly points out, if plaintiff fails to prove every element of her complaint, including notice, her case must fail.  Accordingly, we address the notice issue first.  

On appeal, plaintiff  urges this court to disregard the jury's response to "Special Interrogatory No. 2," because the existence of notice was an issue of law and thus should never have been submitted to the jury.  Plaintiff relies primarily upon 
Livings v. City of Chicago
, 26 Ill. App. 3d 850, 326 N.E.2d 170 (1975), in support of her argument.   In 
Livings
, a pedestrian, sued the City to recover damages for an injury incurred as a result of the City's negligence in maintaining the sidewalk.  The jury returned a verdict for the pedestrian, and the City appealed.  On appeal, the 
Livings
 court acknowledged that where the plaintiff's evidence in regard to notice is uncontradicted, and  sufficiently strong, the trial court may find the City had constructive notice as a matter of law.  26 Ill. App. 3d at 853, 326 N.E.2d at 173.  In that case, the undisputed and uncontradicted evidence established that the deteriorated portion of the sidewalk was approximately two to three feet in width, three feet in length, and 2½ inches deep.  The evidence further established that the defective condition had existed for one or two years prior to the accident.  Applying the rule that "constructive notice is present where a defective condition exists for such a length of time that public authorities, by the exercise of reasonable care and diligence, might have known of the condition," the 
Livings
 court concluded that "[u]nder the facts of the instant case, the only reasonable conclusion to be drawn could well be  that the city had notice, whether actual or constructive, of the defect, and this issue might then have been determined as a matter of law by the court under the [
Pedrick
] standard."  26 Ill. App. 3d at 854, 326 N.E.2d at 173-74.  

Here, the hole in the sidewalk, which was approximately 
eight inches
 wide by three feet long by 2½ inches deep, was somewhat smaller than that in 
Livings
, which was 
two to three feet
 wide by three feet long by 2½ inches deep.  However, based upon the uncontradicted testimony of plaintiff and of Marinakis, this hole, like the hole in 
Livings
, had existed for more than a year.  Moreover, the plaintiff in this case provided additional, uncontradicted testimony that Marinakis had actually reported the damaged sidewalk to the City and repeatedly requested that it be repaired. 

Despite this uncontradicted testimony, the City argues that the existence of actual notice is an issue of fact, rather than an issue of law, because Marinakis's testimony that he asked the City to fix the sidewalk is not testimony as to the existence and specific nature of the defect.  Further, the City argues that without such testimony, plaintiff failed to prove the hole was more than a 
de minimis
 defect.  The City's argument is not well taken.  Under the Governmental Tort Immunity Act, actual notice means notice of the condition only, not the unsafe nature of the condition (
Vacala v. Village of La Grange Park
, 260 Ill. App. 3d 599, 614, 636 N.E.2d 812, 822 (1994)), and notice is imputed to a public entity where, as here, one of its employees has actual knowledge of the defect in question (
Mtengule v. City of Chicago
, 257 Ill. App. 3d 323, 329 (1993)).  Thus, Marinakis was not required to notify the City that the sidewalk was dangerous in order for it to have actual notice; the City was on notice once it was informed that the sidewalk was damaged.  Further, plaintiff's photographs and the jury's response to "Special Interrogatory No. 1" that the sidewalk was not in "reasonably safe condition" establish that the hole was more akin to the hole described in 
Livings
 than to a 
de minimis
 defect in the sidewalk such as a hairline crack.

The City similarly argues the existence of constructive notice is an issue of fact, rather than an issue of law, because plaintiff admitted she walked by the area on a daily basis yet did not notice the hole.  The City reasons that if plaintiff failed to notice the hole, then the City could not have discovered the hole even through the exercise of reasonable care.  Thus, the City contends it was entitled either to have the issue of constructive notice submitted to the jury, or to have a directed verdict in its favor on the issue.  The City cites 
Smolek v. K.W. Landscaping
, 266 Ill. App. 3d 226 (1994), and 
Burke v. Grillo
, 227 Ill. App. 3d 9 (1992), in support of its argument.  In 
Smolek
, the hole was in the lawn of a townhome complex (266 Ill. App. 3d at 227, 639 N.E.2d at 976), and in 
Burke
, the hole was in the parkway adjacent to a residential sidewalk (227 Ill. App. 3d at 12-13, 590 N.E.2d at 966).  Moreover, in 
Smolek
 and 
Burke
, grass and vegetation had grown over the holes, rendering them so inconspicuous that neither the plaintiffs nor the respective defendants could reasonably have known of their existence.  
Smolek
, 266 Ill. App. 3d at 229-30, 639 N.E.2d at 977-78; 
Burke
, 227 Ill. App. 3d at 18, 590 N.E.2d at 969-70.  Here, in contrast to 
Smolek
 and 
Burke
, the hole was in the middle of a busy city sidewalk.

Because the undisputed and uncontradicted evidence established that the deteriorated portion of the sidewalk was approximately eight inches in width, three feet in length, and 2½ inches deep and that the defective condition had existed for one or two years prior to the accident and because the undisputed and uncontradicted evidence established that the City had been advised of the problem, the only reasonable conclusion to be drawn is that the City had notice, whether actual or constructive, of the defect, and the existence of notice should have been determined as a matter of law by the court under the 
Pedrick
 standard.  
See
 
Livings
, 26 Ill. App. 3d at 854, 326 N.E.2d at 173-74.   Accordingly, it was error for the circuit court to submit "Special Interrogatory No. 2" to the jury.  

Because the circuit court erred in submitting "Special Interrogatory No. 2" to the jury, the jury's response is not dispositive of plaintiff's appeal and we address plaintiff's remaining issues.  As previously noted, plaintiff contends she is entitled to judgment 
n.o.v.
 because she proved duty, notice, breach and causation.  Because notice was an issue of law, we consider whether the evidence on the remaining elements of duty, breach and causation, when viewed in the aspect most favorable to the City, so overwhelmingly favors plaintiff  that no contrary verdict based on the evidence could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 229 N.E.2d 504 (1967) (directed verdict); 
Maple v. Gustafson
,  151 Ill. 2d 445, 452-53, 603 N.E.2d 508, 511-12 (1992) (applying 
Pedrick
 standard to judgment 
n.o.v.
).  

First, the issue of duty.  Whether the City owes any duty to the plaintiff and the scope of that duty is a question of law.  
Ward v. K Mart Corp.
, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990).  As a general rule, municipalities have a duty to use reasonable care to maintain public sidewalks for the purposes for which they are intended and for the use of those exercising ordinary care.  
Repinski v. Jubilee Oil Co.
, 85 Ill. App. 3d 15, 19, 405 N.E.2d 1383, 1386 (1980).  The question, then, is not whether there is a duty, but the scope of that duty.  The City contends the plaintiff failed to prove that repairing the hole fell within the scope of its duty because plaintiff failed to prove that the hole amounted to anything more than a 
de minimis
 defect in the sidewalk  The City's argument is not well taken.  Plaintiff's photographs and the jury's response to "Special Interrogatory No. 1" that the sidewalk was not in reasonably safe condition establish that the hole was more akin to the hole described in 
Livings
 than to a 
de minimis
 defect in the sidewalk such as a hairline crack.

Next, breach.  Again, the jury's response to "Special Interrogatory No. 1" that the sidewalk was not in reasonably safe condition establishes that the City had not maintained the sidewalk for the purpose for which it was intended or for the use of those exercising ordinary care.

Finally, causation.  Plaintiff's proof of causation is based upon her own testimony and that of two eyewitnesses.  Unfortunately, neither eyewitness actually saw plaintiff trip; they only saw her falling.  The City countered plaintiff's proof with the testimony of an accident reconstruction expert, Eck.  Eck testified that, based upon plaintiff's deposition, Pawasarat's deposition, and copies of the photographs taken by plaintiff, plaintiff could not have tripped and landed in the street without hitting Pawasarat in the course of her fall.  In particular, Eck based his opinion upon the deposition testimony of plaintiff and Pawasarat regarding their positions at the time of the fall and after the fall.   Given the conflicting testimony, causation is an issue of fact which would preclude entry of judgment 
n.o.v.
  However, because plaintiff also argues the circuit court improperly refused to strike Eck's testimony, it is not necessarily a "given" that there is conflicting testimony.

According to Pawasarat's 
deposition
 testimony, plaintiff fell to his right, but according to Pawasarat's 
trial
 testimony, he was unsure whether plaintiff fell to his left or his right.  Further, Pawasarat was unable to remember exactly where he was standing at the time of the accident and testified he may have been standing further south than he indicated in his deposition.  Accordingly, plaintiff argues the circuit court erred in refusing to strike Eck's testimony as lacking sufficient basis where there was competent eyewitness testimony which conflicted with his expert testimony.  The City counters that plaintiff waived this issue by failing to contemporaneously object to Eck's testimony, that even if the issue has not been waived Eck's testimony was proper because it assisted the jury or was harmless error because of the jury's answer to "Special Interrogatory No. 2."

The City's waiver argument is not well taken as plaintiff timely moved to strike Eck's testimony once Pawasarat's subsequent trial testimony revealed a conflict.  Likewise the City's harmless error argument is not well taken in light of this court's earlier ruling regarding "Special Interrogatory No. 2."  The question, then, is limited to whether Eck's testimony was improper in light of contrary eyewitness testimony or proper because it assisted the jury.

Although there is some merit to plaintiff's argument that the testimony of a reconstruction expert should not be allowed where there is adequate and contradictory eyewitness testimony (see 
Peterson v. Lou Bachrodt Chevrolet, Co.
, 76 Ill. 2d 353, 358-59, 392 N.E.2d 1, 3 (1979); 
Olson v. Bell Helments, Inc.
, 195 Ill. App. 3d 20, 21-23, 551 N.E.2d 1075, 1076-77 (1990); 
Stricklin v. Chapman
, 197 Ill. App. 3d 385, 389-90, 554 N.E.2d 658, 661 (1990); 
Watkins v. Schmitt
, 172 Ill. 2d 193, 206-07, 665 N.E.2d 1379, 1386 (1996)), the problem here is the adequacy of the eyewitness testimony.  Unlike the cases cited by plaintiff, here plaintiff felt, but did not see, what caused her to fall.  Also unlike the cases cited by plaintiff, neither of the other two eyewitnesses actually saw plaintiff trip, they only saw her falling.  Finally, unlike the cases cited by plaintiff, Pawasarat's sworn deposition testimony conflicted with his trial testimony.  

Because it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony (
Maple v. Gustafson
, 151 Ill. 2d 445, 603 N.E.2d 508, 511-12 (1992)), and because the decision whether to admit expert reconstruction testimony is a matter within the court's discretion, the circuit court properly refused to strike Eck's expert testimony.

Because Eck's testimony together with the evidence proffered by plaintiff's eyewitnesses on the element of causation, when viewed in the light most favorable to the City, does not so overwhelmingly favor plaintiff that no verdict for the City could ever stand, plaintiff has failed to satisfy the 
Pedrick
 standard.  Accordingly, plaintiff's argument that she is entitled to judgment 
n.o.v.
 on her entire claim must fail.

Finally, plaintiff argues the circuit court improperly instructed the jury regarding defendant's duty and, in so doing, added an element to plaintiff's burden of proof.  More specifically, the circuit court instructed the jury pursuant to IPI Civil 3d No. B120.09 that the plaintiff had the burden of proving "[t]hat the defendant should have anticipated that person on the premises would not discover or realize the danger, or would otherwise fail to protect themselves against it."  Plaintiff argues this instruction sets the duty threshold for the City at whether it should have known the plaintiff would fail to discover the defect on her own whereas the Governmental Tort Immunity Act sets the duty threshold for the City at actual or constructive notice of the unsafe condition.

We agree and find the notes on use to IPI Civil 3d No. B120.09 to be instructive.  They provide that the instruction "would not be appropriate where liability is predicated on negligent activities by the property owner or his agents" and that in such a case, "normal negligence instructions would apply."   IPI Civi. 3d No. 120.09, Notes on Use, at 355-56.  Such is the case here.  Plaintiff's complaint is based upon the City's negligence in failing to repair a city sidewalk.  Accordingly, the circuit court should have given the normal negligence instruction, IPI Civil 3d No. B21.02, rather than IPI Civil 3d No. B120.09, which improperly added an element to plaintiff's burden of proof based on the "open and obvious doctrine."  See generally 
Ide v. City of Evanston
, 267 Ill. App. 3d 881, 885 (1994) ("open and obvious doctrine" inapplicable to municipalities in sidewalk cases).

For the foregoing reasons, this cause is reversed and remanded for a new trial not inconsistent with this order.

Reversed and remanded.

BUCKLEY and GALLAGHER, JJ., concur.